UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALAN H. GINSBURG,**

       **Plaintiff,**

v.                                                            Case No:  6:17-cv-1666-Orl-41DCI

**UNITED STATES OF AMERICA,**

       **Defendant.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 47) and Plaintiff's Motion for Partial Summary Judgment (Doc. 48). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Motion for Partial Summary Judgment will be denied.

### I. BACKGROUND

Plaintiff is a successful businessman and investor. (Pl.'s Dep., Doc. 47-2, at 89:5–12, 92:4–93:17). For over thirty-five years, Plaintiff owned CED Companies, a construction and development company focused on affordable housing. (*Id.* at 12:17–13:16). Plaintiff has also invested in a number of other businesses. (*Id.* at 92:9–93:17). In 2001, Plaintiff was approached by KPMG LLP ("KPMG"), his accounting firm, and Helios Financial LLC ("Helios") regarding an investment opportunity. (Pl.'s Dep., Doc. 64-1, at 17:1–3, 17:7–8; Henderson Dep., Doc. 64-2, at 96:11–22). The transaction presented to Plaintiff, known as a short option strategy, involved Plaintiff contributing "both offsetting long and short options . . . , and a straddle to a partnership under which the income represented through the gain leg of the straddle is allocated to a tax neutral party while the loss is allocated to the taxable party." (Investor List Form, Doc. 47-38, at 2; *see*

*also* Henderson Dep., Doc. 47-5, at 17:4–10). Tracie Henderson, a former partner at KPMG, explained the potential investment gains, losses, risks, and tax implications to Plaintiff during the presentation. (Doc. 64-2 at 11:25–12:1; Doc. 47-5 at 24:2–5, 24:11–25:25). She also explained that Helios would serve as the investment manager and coordinate with law firms to provide tax opinions for the transaction. (*See* Doc. 47-5 at 21:19–22:4; *see also* Doc. 64-1 at 30:22–31:1).

After the presentation, Plaintiff sought advice from the law firm of Broad and Cassel. (Doc. 47-2 at 29:7–9). Alan Lederman, an attorney at the firm, reviewed a draft tax opinion for the proposed transaction and provided two memoranda setting forth the risks. (*See generally* Sept. 14, 2001 Mem., Doc. 47-15; Sept. 25, 2001 Mem., Doc. 47-50). Lederman did not know Plaintiff's primary motive for entering into the transaction, (Lederman Dep., Doc. 47-4, at 36:15–18), and noted that the draft tax opinion presumed that a pretax motive existed, (Doc. 47-50 at 2). Lederman warned Plaintiff that the transaction's main weakness was its lack of a non-tax business purpose, (Doc. 47-15 at 4; Doc. 47-50 at 2), and concluded that Plaintiff could face tax penalties, (Doc. 47-15 at 4; *see also* Doc. 47-4 at 25:17–23).

Additionally, Plaintiff sought advice from William Simon, an accountant who represented Plaintiff in ongoing Internal Revenue Service ("IRS") examinations. (Simon Dep., Doc. 47-3, at 47:9–21). Simon reviewed the material that KPMG provided to Plaintiff. (*Id.* at 21:22–22:4). He advised Plaintiff that the transaction was sound but warned Plaintiff that he might be subject to an accuracy penalty. (*Id.* at 32:11–17, 33:1–2).

On September 25, 2001, Plaintiff informed KPMG that he agreed to go through with the transaction, (Sept. 25, 2001 E-mail, Doc. 47-41, at 1), and KMPG's engagement letter was executed soon after, (*see generally* Engagement Letter, Doc. 47-35). Plaintiff paid KPMG

$200,000, billed over two years, in exchange for its tax consulting services. (*Id.* at 1). Plaintiff also paid Helios $400,000 for managing and executing the transaction. (Invoice, Doc. 47-37, at 1).

Between October and December 2001, Helios executed the transaction, which involved, among other things, Helios forming AHG Trading LLC ("Trading") and AHG Investments LLC ("Investments"). (*See generally* Trading Operating Agreement, Doc. 47-25; Investments Operating Agreement, Doc. 47-26). Plaintiff contributed a total of $350,000 to Trading and Investments (Investor Summary, Doc. 47-47, at 1). Trading and Investments then entered into a number of European-style digital currency options. (*See generally* Oct. 17, 2001 Digital Option Confirmation, Doc. 47-17; Nov. 1, 2001 Digital Option Confirmation, Doc. 47-20; Dec. 17, 2001 Digital Option Confirmation, Doc. 47-18). As a result of his investment in the currency options, Plaintiff realized an economic loss of $113,950, (Doc. 47-47 at 1), and a net loss of $10,069,506 for tax purposes, (Investor Summary, Doc. 47-46, at 1).

On April 4, 2002, Helios provided Plaintiff with a tax opinion from Sidley Austin Brown and Wood LLP ("Sidley"). (*See generally* Tax Opinion, Doc. Nos. 47-8, 47-9, 47-10, 47-11, 47-12, 47-13). Helios hired and paid Sidley for the tax opinion. (*See* Jan. 2, 2002 Mem., Doc. 47-14, at 1–2). Other than providing Sidley with some background information, (*see generally* Representation Letter, Doc. 47-7), Plaintiff never spoke to any attorneys at Sidley regarding the opinion, (*see* Doc. 64-1 at 38:20–22). Plaintiff also never read the opinion. (*Id.* at 38:23–24).

Grant Thornton LLP ("Grant Thornton") prepared Investments' tax return for the 2001 tax year and reported a loss of $25,618. (*See generally* Investments Form 1065, Doc. 47-30). Meanwhile, KPMG—which had originally agreed to prepare Plaintiff's individual tax return— advised Plaintiff that it would not sign his return unless he disclosed the transaction. (Doc. 47-5 at 35:17–19). Plaintiff refused to disclose the transaction and had his staff at CED Companies file his

return. (Doc. 47-2 at 39:12–16). Plaintiff reported Investments' loss on his Schedule E, (Schedule E, Doc. 47-69, at 4), which reduced his taxable income by $10,069,505 and reduced his tax liability by $3,583,873, (*see* Notice of Computational Adjustment, Doc. 47-57, at 3).

## II.   PROCEDURAL POSTURE

On September 11, 2008, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") (Doc. 47-51) after auditing Investments' 2001 partnership tax return. Therein, the IRS concluded that Investments was a sham that lacked economic substance and declared that it would be disregarded for tax purposes. (Form 870-PT, Doc. 47-52, at 2). As a result, several adjustments were made to Investments' 2001 tax return, and a 40% gross valuation misstatement penalty was applied to any underpayments of tax attributable to Investments' partnership items. (*Id.* at 2–3; Form 870-PT, Doc. 47-53, at 1–3).

Plaintiff filed a petition in Tax Court challenging the FPAA. Plaintiff conceded the adjustments in the FPAA on grounds other than valuation and challenged the 40% gross valuation misstatement penalty. *AHG Investments, LLC v. Comm'r*, 140 T.C. 73, 74 (2013). The Tax Court rejected Plaintiff's challenge, sustaining the penalty and adjustments set forth in the FPAA. *Id.* at 85.

The IRS made computational adjustments to Plaintiff's 2001 tax return and assessed additional tax, penalties, and interest against him consistent with the Tax Court's Order. (Certificate of Assessments, Doc. 47-55, at 5). Plaintiff paid the assessments in full, (*id.* at 6), and filed a refund claim in the amount of $1,904,849.31, (Claim for Refund, Doc. 47-56, at 1). Specifically, Plaintiff requested a refund of the gross valuation misstatement penalty, the interest paid on the penalty, and a portion of the underpayment interest he paid. (*Id.* at 2–3). As a basis for the refund, Plaintiff asserted that he reasonably and in good faith relied on "accounting advice

from KPMG, a tax opinion from Sidley Austin Brown & Wood LLP, advice from the law firm Broad & Cassel, tax return services from Grant Thornton LLP, and financial advice from Helios Financial LLC." (*Id.* at 2). The IRS denied Plaintiff's refund claim. (*See generally* Jan. 20, 2017 Letter, Doc. 1-5). On September 20, 2017, Plaintiff initiated the present action. (*See generally* Compl., Doc. 1).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving]

party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## IV.     ANALYSIS

### A.     Compliance with Section 6751(b)

Plaintiff asserts that summary judgment should be granted in his favor regarding the gross valuation misstatement penalty because the IRS failed to comply with section 6751(b) of the Internal Revenue Code prior to assessing the penalty. Section 6751(b) provides, in pertinent part: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." I.R.C. § 6751(b)(1). Plaintiff argues that compliance with section 6751(b) is part of Defendant's burden of production in establishing Plaintiff's liability for the penalty, *see* I.R.C. § 7491(c), and therefore, he is entitled to a refund due to the IRS's noncompliance. Defendant advances a number of arguments in response, namely that the Court does not have jurisdiction to consider Plaintiff's argument because Plaintiff failed to raise it in his refund claim before the IRS.

"A taxpayer may not sue the United States for a tax refund until [he] first files a refund claim with the government" in compliance with I.R.C. § 7422(a). *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992). "The applicable regulations accompanying section 7422(a) require the taxpayer to detail each ground upon which a refund is claimed." *Id.* (citing Treas. Reg. § 301.6402-2(b)(1)). Under the variance doctrine, any subsequent litigation of the government's denial of a refund claim is "limited to the grounds fairly contained within the refund claim." *Id.* Therefore, "[f]ederal courts have no jurisdiction to entertain taxpayer allegations that

impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Id.* (collecting cases).

Here, Plaintiff concedes that his refund claim did not allege that the IRS failed to comply with section 6751(b). (*See* Doc. 48 at 9). Nonetheless, Plaintiff argues that the variance doctrine does not apply in this instance because Defendant bears the burden of demonstrating compliance with section 6751(b). Plaintiff does not provide any authority demonstrating that noncompliance with section 6751(b) can be raised for the first time in federal district court.[1] To the contrary, courts in this District have held that such an argument must be raised in the taxpayer's refund claim. *See Logan v. United States*, No. 2:18-cv-99-FtM-29MRM, 2018 WL 3067892, at *3 (M.D. Fla. June 21, 2018) (holding that the court lacked subject matter jurisdiction to consider taxpayer's section 6751(b) argument that it raised for the first time in district court).

Alternatively, Plaintiff avers that the variance doctrine does not apply because he was unaware of the IRS's noncompliance with section 6751(b) and therefore could not allege it in his refund claim. Plaintiff cites to *El Paso CGP Co. v. United States*, 748 F.3d 225 (5th Cir. 2014) for support. However, in *El Paso*, the IRS took subsequent action against the taxpayer after the taxpayer filed its administrative claim. *Id.* at 229. Here, the IRS took no such subsequent action. Nothing precluded Plaintiff from raising the IRS's alleged noncompliance in his refund claim, and Plaintiff's failure to do so prevents this Court from considering it. Plaintiff raises no other argument in support of his Motion for Partial Summary Judgment, and therefore, the motion will be denied.

**B.  Plaintiff's Reliance on Advisors**

---

[1] Plaintiff's reliance on *Chai v. Comm'r*, 851 F.3d 190 (2nd Cir. 2017) is misplaced because there the taxpayer raised the issue of compliance with section 6751(b) in post-trial briefing before the Tax Court. *Id.* at 203. Here, Plaintiff raised the argument for the first time before this Court. *See Kaufman v. Comm'r*, 784 F.3d 56, 71 (1st Cir. 2015) (finding that taxpayer had not preserved section 6751(b) argument by failing to raise it during the tax court proceedings).

In his refund claim, Plaintiff avers that he reasonably and in good faith relied on the advice of KPMG, Sidley, Broad and Cassel, Grant Thornton, and Helios regarding the transaction. Although not mentioned in the refund claim, Plaintiff also asserts that he relied on advice from Simon. As a result, Plaintiff concludes that he is entitled to a refund of the gross valuation misstatement penalty, the interest paid on the penalty, and a portion of the underpayment interest he paid. Defendant argues that it is entitled to summary judgment because Plaintiff did not reasonably or in good faith rely on the advice of his advisors.

Section 6664 of the Internal Revenue Code provides a reasonable cause exception for tax underpayments so long as the taxpayer can demonstrate that there was "a reasonable cause" for the underpayment and that the taxpayer "acted in good faith with respect to such [underpayment]." I.R.C. § 6664(c)(1).[2] A determination of reasonable cause is "made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1). "The most important factor in this determination is the 'extent of the taxpayer's effort to assess [his] proper tax liability.'" *Boree v. Comm'r*, 837 F.3d 1093, 1106 (11th Cir. 2016) (quoting Treas. Reg. § 1.6664-4(b)(1)).

A taxpayer may satisfy his burden "by showing that he reasonably relied in good faith on the advice of an independent professional." *Gustashaw v. Comm'r*, 696 F.3d 1124, 1139 (11th Cir. 2012) (citing *United States v. Boyle*, 469 U.S. 241, 251 (1985)). For reliance on a professional's advice to be reasonable, the taxpayer must show that: (1) "the advice was based on all pertinent facts and circumstances and the law as it relates to those facts and circumstances"; (2) the advice

---

[2] Similarly, to the extent that Plaintiff claims that he is entitled to a refund of a portion of the underpayment interest he paid, Plaintiff must establish that he acted reasonably and in good faith. *See* Treas. Reg. § 301.6404-4(b)(5)(ii)(B) ("The IRS may suspend interest relating to a listed transaction . . . if the taxpayer has acted reasonably and in good faith.").

was not based on any "unreasonable factual or legal assumptions"; and (3) "it was objectively reasonable for the taxpayer to rely on that advice." *Id.* at 1139 (citations and quotations omitted). The taxpayer's education and business experience are also relevant to determine whether the taxpayer's reliance was reasonable and done in good faith. *Id.* (citing Treas. Reg. § 1.6664-4(c)(1)).

"Reliance is not reasonable if the adviser was a promoter of the transaction or otherwise had a conflict of interest about which the taxpayer knew or should have known." *Id.* (collecting cases). Similarly, reliance on professional advice is unreasonable if the taxpayer "knew or should have known that the transaction was 'too good to be true'" based on all the circumstances. *Id.* (quoting *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1382 (Fed. Cir. 2010). Plaintiff's reliance on each of the abovementioned professionals will be addressed in turn.

### 1. KPMG

Defendant asserts that Plaintiff cannot reasonably rely on the advice of KPMG because it promoted the transaction. The record evidence shows that KPMG approached Plaintiff regarding the transaction, helped monitor the transaction, and provided additional services. In exchange, Plaintiff paid KPMG $200,000. Thus, KPMG promoted the transaction. *See 106 Ltd. v. Comm'r*, 684 F.3d 84, 91 (D.C. Cir. 2012) (holding that tax professional who brought tax shelter opportunity to taxpayer's attention and coordinated the transaction was a promoter). To the extent Plaintiff argues that he was unaware of any conflict of interest, Plaintiff's argument is not well taken. *See id.* (finding that taxpayer knew or should have known that tax professional was a promoter when he recommended a tax shelter to the taxpayer and promised to implement it).

While Plaintiff had a preexisting relationship with KPMG, Plaintiff has not presented any authority demonstrating that a preexisting relationship, without more, precludes KPMG from being a promoter. In *106 Ltd. v. Commissioner*, 136 T.C. 67 (2011), the court determined that a tax

advisor was not a promoter of a transaction where he: (1) "has a long-term and continual relationship with his client"; (2) "does not give unsolicited advice regarding the [transaction]"; (3) "advises only within his field of expertise"; (4) "follows his regular course of conduct in rendering his advice"; and (5) "has no stake in the transaction besides what he bills at his regular rate." 136 T.C. at 80. Here, it is undisputed that KMPG provided Plaintiff with unsolicited advice regarding the transaction. Therefore, Plaintiff's reliance on KMPG was not reasonable or done in good faith because Plaintiff knew or should have known that KMPG was a promoter of the transaction.

### 2. Helios

Defendant argues that Plaintiff cannot rely on advice from Helios because it was also a promoter of the transaction. Like KPMG, Helios provided Plaintiff with unsolicited advice. Helios not only helped KPMG pitch the transaction to Plaintiff, but it was also responsible for implementing the transaction. Plaintiff did not have any preexisting relationship with Helios, and he paid $400,000 for its services. Thus, Helios was also promoter of the transaction. *See Stobie Creek*, 608 F.3d at 1382 ("Advice hardly qualifies as disinterested or objective if it comes from parties who actively promote or implement the transactions in question."). Plaintiff presents no argument in response. Therefore, Plaintiff's reliance on Helios was not reasonable or done in good faith.

### 3. Sidley

Defendant contends that Plaintiff did not reasonably rely on Sidley's advice because Sidley was an agent of Helios, which, as discussed above, was a promoter of the transaction. Sidley was hired by Helios to provide Plaintiff with a tax opinion of the transaction, and Helios compensated Sidley for the tax opinion. Helios and Sidley had a similar arrangement for several other clients. (*See* Doc. 47-14 at 1–2). Moreover, other than providing Sidley with representations of certain

facts, Plaintiff never spoke to any attorneys at Sidley regarding the opinion. Plaintiff does not dispute that he was aware of Sidley's relationship with Helios but contends that their relationship did not create a conflict of interest that would render Sidley's advice unreliable. The Court disagrees. Based on these facts, Plaintiff's reliance on the tax opinion provided by Sidley was not reasonable or done in good faith. *See Gustashaw*, 696 F.3d at 1141 (holding that it was unreasonable for taxpayer to rely on tax opinion from law firm referred to him by transaction promoter where, among other things, he did not personally retain, compensate, or meet with the firm).

    4.    *Grant Thornton*

Defendant asserts that Plaintiff did not reasonably or in good faith rely on advice from Grant Thornton because Grant Thornton never provided advice to Plaintiff regarding the transaction. Other than reiterating that he relied on Grant Thornton, Plaintiff has not provided evidence of any communication from Grant Thornton advising Plaintiff on the transaction. "There is no advice without some communication from the adviser, and that communication must set forth the adviser's analysis or conclusion." *RB-1 Inv. Partners v. Comm'r*, 115 T.C.M. (CCH) 1323, 2018 WL 2208363, at *9 (2018) (quotation omitted). Although Grant Thornton prepared Investments' Form 1065 for the 2001 tax year, that, without more, does not demonstrate that he advised Plaintiff on the transaction. *See id.* ("Just because a CPA prepared the tax return doesn't mean he or she has opined on any or all of the items reported therein." (quotation omitted)). Plaintiff does not provide any argument in opposition. Therefore, Plaintiff's alleged reliance on Grant Thornton was not reasonable or done in good faith.

    5.    *Broad and Cassel*

Defendant argues that Plaintiff cannot reasonably rely in good faith on Broad and Cassel's advice because the firm did not possess all the pertinent facts and circumstances. For a taxpayer to reasonably rely in good faith on advice, "[t]he advice must be based upon all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(c)(1)(i). "For example, the advice must take into account the taxpayer's purposes (and the relative weight of such purposes) for entering into a transaction and for structuring a transaction in a particular manner." *Id.* Here, Broad and Cassel provided Plaintiff with two memoranda regarding the transaction, but the preparing attorney was unaware of Plaintiff's motivation for entering into the transaction. Because Broad and Cassel's advice was not based on all the pertinent facts and circumstances, Plaintiff could not have reasonably or in good faith relied on it.

### 6. *William Simon*

Lastly, Plaintiff claims to have relied on Simon for advice on the transaction. Defendant avers that the variance doctrine bars Plaintiff from asserting his reliance on Simon as a defense in this case because Plaintiff makes no mention of Simon in his refund claim. As previously stated, the variance doctrine prohibits a taxpayer from varying or augmenting the grounds specified in their administrative refund claim in subsequent litigation. *Charter Co.*, 971 F.2d at 1579. Indeed, courts have no jurisdiction to entertain allegations that impermissibly vary from the refund claim. *Id.* The "essential requirements" test is used to determine whether a taxpayer's lawsuit impermissibly varies from the grounds stated in his or her refund claim. *Id.* at 1580. Under this test, "crystal clarity and exact precision are not demanded," but the taxpayer must, at a minimum, "identify in its refund claim the essential requirements of each and every refund demand." *Id.* (quotation omitted). "The Eleventh Circuit has made it clear that the variance doctrine is to be 'steadfastly enforced.'" *Campbell & Sons Oil Co. v. United States*, No. CV-94-U-2461-NE, 1995

WL 691892, at *3 (N.D. Ala. Sept. 8, 1995), *aff'd sub nom. Campbell & Sons Oil Co. v. United States*, 99 F.3d 1155 (11th Cir. 1996) (quoting *Charter Co.*, 971 F.2d at 1579).

Here, it is undisputed that Plaintiff did not list Simon among the advisors that he relied on in his refund claim. Nonetheless, Plaintiff argues that the IRS was previously put on notice of his reliance on Simon, and therefore, this Court has jurisdiction to consider the issue. Specifically, Plaintiff notes that during the Tax Court proceeding, Simon submitted an affidavit stating that he advised Plaintiff on the transaction. (Simon Aff., Doc. 64-3, at 24–25). Plaintiff also notes that Simon was interviewed by the Department of Justice during the Tax Court proceeding.

A similar argument was rejected in *Hawco Equities, Inc. v. United States*, No. 00-0043-CIV, 2000 WL 1479076 (S.D. Fla. Aug. 28, 2000). In *Hawco*, the taxpayer argued that the variance doctrine did not bar grounds for recovery not contained within its refund claim because the IRS had notice of those grounds via numerous meetings and telephone conversations with the taxpayer. 2000 WL 1479076 at *4. The court disagreed, noting that "[t]he law requires the taxpayer to do more than give the government a good lead based upon the government's ability to infer interconnectedness." *Id.* at *5 (quoting *Charter Co.*, 971 F.2d at 1579–80); *see also Hover v. United States*, No. 5:07-cv-440-Oc-10GRJ, 2008 WL 11336619, at *4 (M.D. Fla. Dec. 11, 2008) (rejecting taxpayer's argument that the variance doctrine did not bar legal theory because the taxpayer had raised it in all his prior dealings with the IRS). "[T]he IRS is not a clairvoyant[] and is not expected to guess each and every argument that a taxpayer will ultimately set forth in its refund claim." *Hover*, 2008 WL 11336619, at *4. Accordingly, the Court finds that it lacks subject matter jurisdiction to consider Plaintiff's reliance on Simon.[3]

---

[3] To the extent that Plaintiff argues that he is not barred from asserting his reliance on Simon because the IRS already considered that issue during the Tax Court proceeding, Plaintiff has not provided evidence that the issue was actually considered by the IRS. *Cf. Teco Energy v.*

### 7. Whether Plaintiff Knew or Should Have Known that the Transaction was Too Good to Be True

Alternatively, Defendant argues that Plaintiff knew or should have known that the transaction was too good to be true, and therefore, his reliance on professional advice was unreasonable. "Reliance on professional advice is . . . unreasonable when the taxpayer knew or should have known that the transaction was too good to be true in light of all the circumstances, including the taxpayer's education, sophistication, and reasons for entering into the transaction." *Gustashaw*, 696 F.3d at 1139 (quotations omitted). Here, it is undisputed that Plaintiff is a successful businessman and investor with over thirty-five years of experience. Part of Plaintiff's business strategy has been to create tax savings. (*See* Doc. 47-2 at 21:3). While Plaintiff may not be familiar with investing in currencies, (*see id.* at 18:4–9), he understood that the transaction had "very little downside" because if Plaintiff "lost any money in the transaction, there would more than likely be . . . tax savings that could offset [his] losses[,]" (*id.* at 20:14–18). By investing a total of $950,000, including fees, Plaintiff was able to reduce his taxable income by $10,069,505. The improbable tax advantages offered by the transaction should have alerted Plaintiff that the transaction was too good to be true, especially in light of his business experience. *See Gustashaw*, 696 F.3d at 1141–42 (finding transaction too good to be true where sophisticated taxpayer claimed a loss of $9,938,324 in exchange a $800,000 fee); *see also 106 Ltd.*, 684 F.3d at 93 (transaction too good to be true where tax shelter offered $1,000,000 loss from a transaction earning taxpayer $10,000 minus fees); *Pasternak v. Comm'r*, 990 F.2d 893, 903 (6th Cir. 1993) (where claimed tax deduction exceeded the amount invested by fifty percent, "a reasonably prudent person would have

---

*United States*, No. 98-430-CIV-J-T, 1999 WL 1273727, at *5 (M.D. Fla. Oct. 21, 1999) (finding that the IRS considered the taxpayer's claim where the IRS mentioned the issue in its response to the refund claim).

asked a tax advisor if th[e] windfall were not too good to be true" (quotation omitted)). Therefore, because the transaction was too good to be true, Plaintiff's reliance on professional advice was unreasonable, and Defendant is entitled to summary judgment.

### V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 48) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 47) is **GRANTED**.

3. Plaintiff's Daubert Motion to Exclude Testimony of David DeRosa (Doc. 49), Plaintiff's Omnibus Motion in Limine (Doc. 81), and Plaintiff's Motion for Confirmation of Defendant's Burden of Production (Doc. 82) are **DENIED as moot**.

4. The trial status conference set for March 21, 2019, is **CANCELLED**.

5. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on his claims against Defendant. Thereafter, the Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on March 11, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record